Green and Cabell, J. and Brooke, President,
declared their intire concurrence with the opinion of judge Carr; but
*93 Coalter, J.
said he was not prepared to say, as a general proposition, that, where a testator or intestate has fairly purchased property, a horse for instance, from one who turns out afterwards not to be the true owner, and dies possessed of such property, having for a considerable time used it as his own, and it comes to the possession of his executor or administrator after his death, and he, without any notice or demand from the true owner, sells the horse, with the other perishable estate, and fully administers the whole personal fund, if in such case, trover he brought against the representative, for a conversion by him as an individual, the action can be sustained, so as to throw the loss on him.
He added : I understand the law to be, that if a defendant come to possession of a chattel by finding, or in other lawful way, it is necessary for the plaintiff to prove a. refusal to deliver, unless the defendant shall have unlawfully intermeddled with the goods. If they be lost or taken from him, he is not guilty of a conversion, because he has not disposed of them as if they were his own.
Does the executor or administrator, as an individual, unlawfully intermeddle with the goods, in the case put? Can he be said to have converted them to his own use ? Is it an answer to this to say, that he has converted them to the use of the estate ? It will, no doubt, be a conversion in the testator or intestate, in the case put, for which, under the act of assembly, trover will lie against the executor or administrator, and may be a conversion by him as executor or administrator, and for which trover may lie against him as such, so as to charge the estate for the value : or an action for money had and received by the executor or administrator as such, so as to charge the estate; but the question is, whether, under our system of laws, in relation to executors and administrators, and especially since the party is not without his just remedy under the act giving trover against executors or administrators as well as for them, he can be charged individually, as for a conversion to his own use, unless demand and refusal, before he has sold, be proved ? When the *94 goods come to the hands of the executor or administrator, the regular remedy is replevin or detinue for them. 1 Wm’s. Saund. 216. a. note 1. The law makes it his duty to sell: he cannot resist the claims of creditors : he cannot demand, as to them, that the personal estate shall remain five years in his possession, so as to put to rest all .demands of this kind: he cannot resort back to creditors, since he cannot shew who has received the money arising from any particular chattel. Suppose he departs from the directions of the law as to selling, leaves the property to answer executions, and points out to the sheriff what has come to his hands, and he levies and amongst other things takes the horse in dispute and sells him, no notice being given; is this a conversion by him individually ? Yet this would be a conversion in the finder of goods, for they would go to his use; he would have disposed of them as his own.
If A. deliver goods, which afterwards turn out to be the property of B. to C. to deliver to D. and C. does so deliver them, having no notice that they are the property of B. is he guilty of a conversion of them to his own use?
The most analogous case which I can find to the supposed one now under consideration, is that in which I understand it to have been settled, that if a sheriff levy an execution on the goods of a bankrupt, and sell them after the act of bankruptcy, but before commission and assignment, he is not liable in trover, though the goods ceased to be the goods of the bankrupt, from the moment of the act of bankruptcy. But the plaintiff, at whose suit they were seized, is liable to the action; for though equally ignorant, they came thus to his use. Before assignment, the sheriff is presumed to be ignorant of the act of bankruptcy, and is acting in obedience to the writ, (how it would be if express knowledge of it was proved, is another question): hut after commission and assignment, which is public and notorious to all the country, he can no longer plead ignorance, and acts at his own peril.
Our legislature, by various statutes, has shewn a disposition to protect executors and administrators, who are honestly *95 doing their duty, against individual loss. If a party does not know his own rights, why shall an executor or admmistrator of the adverse claimant, be presumed to know them? If from any cause, he be unable to make his rights known, even by a demand in pais, why shall his misfortune, if he lose his property, be visited on one equally innocent with himself?
But the present case is not considered as presenting the broad proposition laid down in the case above supposed. It presents the case of a slave conveyed in trust by a deed duly recorded (there being no objection to the deed, as not being duly recorded) and there is consequently implied, notice, at least, that the title was not in the intestate. This is not a case of demurrer to evidence; and we know not what was proved.
Ail I mean to say in this case, is, that, as I am at present advised, 1 am not prepared to affirm the broad doctrines, which have been contended for; nor am I intirely prepared to disaffirm them. I wish the point, as it really is not involved in this case, not to be considered as settled by it.